**PHARMACIA CORPORATION and Solutia Inc., Plaintiffs,**

v.

**CLAYTON CHEMICAL ACQUISITION LLC., Service America Corporation, Volume Services, Inc., Village of Sauget, Estate of Paul Sauget, U.S. Paint Corporation, Crown Cork and Seal Co., USA Inc., Polyone Corporation, Basf Corporation, Marchem Corporation, Defendants.**

No. 02–CV–0428 MJR.

United States District Court, S.D. Illinois.

March 8, 2005.

Kenneth R. Heineman, Husch & Eppenberger, Bradley S. Hiles, Blackwell, Sanders et al., St. Louis, MO, for Plaintiffs.

Sheldon D. Korlin, Law Offices of Sheldon D. Korlin, P.C., Alton, IL, Amy M. Trojecki, Matthew J. Borger, Michael K. Coran, Klehr, Harrison et al., Philadelphia, PA, Richard A. Ahrens, Robert J. Golterman, Lewis, Rice et al., St. Louis, MO, Daniel J. Hayes, Law Offices of Daniel J. Hayes, Michael L. Wagner, Hinshaw & Culbertson, Thomas R. Ysursa, Becker, Paulson et al., Bernard J. Ysursa, Sr., Cook, Ysursa et al., Belleville, IL, Daniel C. Murray, Frederick S. Mueller, Garrett L. Boehm, Jr., Johnson & Bell, Joseph R. Lanser, Lorena S. Neal, Thomas D. Lupo, Seyfarth, Shaw et al., Chicago, IL, Daniel W. Farroll, Musette H. Vogel, Burroughs, Hepler et al., Edwardsville, IL, Eugene P. Schmittgens, Jr., Lathrop & Gage, St. Louis, MO, William F. Ford, Lathrop & Gage, Kansas City, MO, Penni S. Livingston, Livingston Law Office, Swansea, IL, for Defendants.

## MEMORANDUM and ORDER

REAGAN, District Judge.

Now before the Court are Defendants Estate of Paul Sauget, the Village of Sauget, MarChem Corporation and PolyOne Corporation's motions to dismiss Plaintiffs Pharmacia Corporation (Pharmacia) and Solutia Inc.'s (Solutia) second and third amended complaints (Docs. 282, 280, 285, and 281, respectively) and joint memorandum in support (Doc. 284).[1] Plaintiffs brought this action against Defendants pursuant to Section 113 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. 9613, seeking contribution for performing response activities at certain sites that make up what the United States Environmental Protection Agency (USEPA) identifies as the Sauget Area 2 Sites in Sauget, Illinois (Docs. 78 and 148). In their motions to dismiss Defendants argue that the United States Supreme Court's December 13, 2004 decision in *Cooper Industries, Inc. v. Aviall Services,* —— U.S. ——, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004), prevents Plaintiffs from bringing their contribution claims as the Supreme Court held therein that contributions claims are authorized under Section 113 "only 'during or following' a civil action under Section 106 or 107(a)" and there are no pending or prior civil actions in the instant case against Plaintiffs under Section 106 or 107(a). Plaintiffs argue in response that their claims were brought based on two administrative orders issued by USEPA that creates a right to bring a Section 113 suit. Doc. 296, p. 1. The Court begins its analysis with a brief recitation of the factual background and procedural history.

### Factual Background and Procedural History

Sauget Area 2 is located within Cahokia, East St. Louis and Sauget, Illinois, in the floodplain bordering the eastern edge of the Mississippi River. The Sauget Area 2

---

**1.** Each Defendant filed a separate motion to dismiss as the second amended complaint is against MarChem Corporation, the Village of Sauget and the Estate of Paul Sauget (Doc. 78), while the third amended complaint is against just PolyOne Corporation (Doc. 148). However, Defendants filed a joint memorandum in support as the arguments in support of dismissing the complaint as to each Defendant are the same. The Court notes that the joint memorandum in support was filed twice, first at Doc. 284 and then again at Doc. 286.

sites comprise four landfills that the USEPA has labeled as Sites P, Q, R and S, and one backfilled lagoon labeled by the USEPA as Site O, as well as the groundwater and surface water contamination emanating from these sources.

On June 23, 2000, the USEPA sent Special Notice Letters, pursuant to Section 122(e)(1) of CERCLA, to approximately one hundred potentially responsible parties (PRPs) identified by USEPA as potentially responsible for releases and threatened releases of hazardous substances at Sauget Area 2. The Special Notice Letter requested that the parties undertake a Remedial Investigation and Feasibility Study (RI/FS) for Sauget Area 2. Pharmacia and Solutia each received the Special Notice Letter regarding Sauget Area 2.

Pharmacia and Solutia, along with eighteen other recipients of the Special Notice Letter, formed the Sauget Area 2 Sites Group (SA2SG). On November 24, 2000, USEPA entered into an Administrative Order by Consent (AOC) with the SA2SG. The AOC requires Pharmacia, Solutia, and the other participating PRPs to conduct a RI/FS for the Sauget Area 2 source sites. Pharmacia and Solutia's participation under the Order, according to its express terms, does not constitute an admission of liability of USEPA's findings or determinations contained in the Order except in a proceeding to enforce the terms of the Order. The total cost of work required by the AOC is estimated to be $4,000,000.00. At the time the second amended complaint was filed on June 12, 2003, Plaintiffs incurred costs totaling $1,970,006.00 associated with implementing the work required by the AOC.

Additionally, on November 14, 2001, USEPA sent a letter to the SA2SG requiring the submission of a Focused Feasbility Study (FFS) for groundwater migrating toward the Mississippi River under Site R. Solutia drafted and submitted a draft FFS to USEPA and USEPA executed a Record of Decision (ROD) on September 30, 2002, for Interim Groundwater Remedy for the groundwater operable unit at Sauget Area 2. That same day, USEPA issued an Unilateral Administrative Order for Remedial Design and Interim Remedial Action (UAO) to approximately seventy-five PRPs. Both Pharmacia and Solutia are parties to the UAO. The UAO requires the Respondents to perform a remedial design for the Interim Groundwater Remedy and to implement the Interim Groundwater Remedy by performing an interim remedial action. Failure to comply with the UAO subjects each named Respondent to civil penalties in the amount of $27,500 per day and possible punitive damages. Plaintiffs have incurred costs exceeding $1,000,000.00 in implementing the work required by the UAO.

On May 15, 2002, Plaintiffs brought their original complaint seeking contribution for the work they performed pursuant to the AOC and UAO (Doc. 1). Defendants filed their motions to dismiss claiming that in light of the Supreme Court's recent decision in *Cooper* that sheds light on CERCLA, Plaintiffs fail to state a claim upon which relief may be given (Docs. 280, 281, 282 and 285 and joint memorandum in support at Doc. 284).[2] Plaintiffs respond-

**2.** The Court notes that Defendants' motions to dismiss argue both that this Court lacks subject matter jurisdiction and that Plaintiffs fail to state a claim upon which relief may be given. However, the Court believes Defendants confuse the subject matter jurisdiction argument, as this Court does have subject matter jurisdiction to hear Section 113 CERCLA claims. The question is whether or not Plaintiffs can state a claim upon which relief may be given pursuant to Section 113. Therefore, the Court will interpret Defendants' motions to dismiss as motions to dismiss pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) for failure to state a claim.

ed in opposition at Docs. 297 and 298, to which Defendants individually replied at Docs. 300, 301, 302 and 303. This matter being fully briefed, the Court finds as follows.

### Standard Governing a Motion to Dismiss

The purpose of a motion to dismiss under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) is to "test the sufficiency of the complaint, not to decide the merits" of the case. *Triad Associates, Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir.1989). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all well-pled factual allegations and resolves in the plaintiff's favor all reasonable inferences. *Echevarria v. Chicago Title & Trust Co.*, 256 F.3d 623, 625 (7th Cir.2001), *citing Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001).

Dismissal for failure to state a claim is proper only if the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Alper v. Altheimer & Gray*, 257 F.3d 680, 684 (7th Cir.2001), *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *and Veazey v. Communications & Cable of Chicago, Inc.*, 194 F.3d 850, 854 (7th Cir.1999). *Accord Galdikas v. Fagan*, 342 F.3d 684, 686 (7th Cir.2003)("Dismissal is proper if it appears beyond doubt that the plaintiffs cannot prove any set of facts entitling them to relief.").

### Analysis

#### 1. Overview of CERCLA.

Under CERCLA, the federal government may clean up a contaminated area itself (see Section 104) or it may compel responsible parties to perform the cleanup (see Section 106(a)). *Cooper*, 125 S.Ct. at 580 (2004), *citing Key Tronic Corp. v. United States*, 511 U.S. 809, 814, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). In either scenario, the government may recover its response costs under Section 107, 42 U.S.C. 9607, the "cost recovery" section of CERCLA. Section 107(a) numerates four classes of potentially responsible persons (PRPs) and provides that they "shall be liable" for, among other things, "all costs of removal or remedial action incurred by the United States Government ... not inconsistent with the national contingency plan." Section 107(a)(4)(A). Section 107(a) further provides that PRPs shall be liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." Section 107(a)(4)(B).

After CERCLA's enactment, litigation arose over whether a private entity that had been sued in a cost recovery action (by either the government or another PRP) could obtain contribution from other PRPs. *See Cooper*, 125 S.Ct. at 581. As originally enacted, CERCLA contained no provision expressly providing for a right of action for contribution. Nonetheless, a number of district courts held that a right of contribution arose either impliedly from provisions of the statute or as a matter of federal common law. *Id.*

Subsequently, Congress amended CERCLA in the Superfund Amendments and Reauthorization Act of 1986 (SARA) to provide an express cause of action for contribution, codified as CERCLA Section 113(f)(1):

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response

costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. 9613(f)(1). SARA also created a separate right of contribution, Section 113(f)(3)(b), for "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement." Therefore, once SARA was enacted, CERCLA provided for a right of cost recovery in certain circumstances, Section 107(a), and a separate right to contribution in other circumstances, Sections 113(f)(1) and 113(f)(3)(B).

In the case at bar, Defendants argue: (1) Count One fails as the Plaintiffs' Administrative Order by Consent (AOC) does not qualify as an administrative settlement to support a Section 113(f)(3) claim, and (2) Plaintiffs cannot bring a Section 113(f)(1) claim in either Count One or Count Two as neither were brought during or following a civil action under Section 106 or 107(a) as an administrative order does not qualify as a civil action pursuant to the Supreme Court's holding in *Cooper*. Since *Cooper* is what prompted the motions to dismiss, the Court will briefly discuss the decision.

## 2. Overview of the Supreme Court's decision in *Cooper Industries, Inc. v. Aviall Services, Inc.*

The case of *Cooper* concerned four contaminated aircraft engine maintenance sites in Texas that Cooper Industries, Inc. owned and operated until 1981, when it sold them to Aviall Services, Inc. *Cooper*, 125 S.Ct. at 582. Several years later, Aviall discovered that both it and Cooper had contaminated the facilitates when petroleum and other hazardous substances

leaked into the ground and ground water through underground storage tanks and spills. *Id.*

Aviall notified the Texas Natural Resource Conversation Commission (Commission) of the contamination, and the Commission informed Aviall that it was violating state environmental laws, directed Aviall to clean up the site, and threatened to pursue an enforcement action if Aviall failed to undertake remediation. *Id.* However, neither the Commission nor the EPA took judicial or administrative measures to compel cleanup.

Aviall incurred approximately $5 million in cleanup costs that it took under the State's supervision. *Id.* Aviall then filed suit against Cooper in the United States District Court for the Northern District of Texas, alleging that, pursuant to Section 113(f)(1), it was entitled to seek contribution from Cooper as a PRP under Section 107(a) for response costs and other liability Aviall incurred in connection with the Texas facilities. *Id.* Both parties moved for summary judgment and the District Court granted Cooper's motion holding that relief under Section 113(f)(1) was unavailable to Aviall because it had not been sued under CERCLA Section 106 or 107. *Id.* A divided panel of the United States Court of Appeals for the Fifth Circuit affirmed. *Id.* However, on rehearing en banc, the Fifth Circuit reversed by a divided vote, holding that Section 113(f)(1) allows a PRP to obtain contribution from other PRPs regardless of whether the PRP has been sued under Section 106 or 107. *Id.* at 583. There the Fifth Circuit found that the "may" in Section 113(f)(1) ("Any person may seek contribution ...") did not mean "may only" in light of the last sentence of Section 113(f)(1) which states that nothing in the section shall diminish any person's right to bring a contribution action in the absence of a section 106 or 107(a) action.

*Id.* The Supreme Court granted certiorari and reversed. *Id.*

The Supreme Court found the "natural meaning" of Section 113(f)(1) is that "contribution may only be sought subject to the specified conditions, namely, 'during or following' a specified civil action." *Id.* The Supreme Court rejected Aviall's argument that "may" should be read permissively such that "during or following" a civil action is one, but not the exclusive instance in which a person may seek contribution. *Id.* The Supreme Court stated that if "Section 113(f)(1) were read to authorize contribution actions at any time, regardless of the existence of a Section 106 or 107(a) civil action, then Congress need not have included the explicit 'during or following' condition." Further, the Supreme Court stated that if Section 113(f)(1) were to authorize contribution actions at any time, then Section 113(f)(3)(B), which permits contribution actions after settlement, would equally be superfluous. *Id.* The Supreme Court placed emphasis on its "settled rule that [it] must, if possible, construe a statute to give every word some operative effect". *Id.* at 584, *citing United States v. Nordic Village, Inc.,* 503 U.S. 30, 35–36, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).

Additionally, the Supreme Court stated its decision did not follow simply from Section 113(f)(1), but from the whole of Section 113. *Id.* The Supreme Court noted that Section 113 provides two express avenues for contribution: (1) Section 113(f)(1), "during or following" specified civil actions, and (2) Section 113(f)(3)(B), after an administrative or judicially approved settlement that resolves liability to the United States or a State. *Id.* Then, the Supreme Court noted that Section 113(g)(3) provides two corresponding 3–year limitations periods for contribution actions, one beginning at the date of judgment and the other beginning at the date of settlement. *Id.* The Supreme Court found it important that "notably absent" from Section 113(g)(3) was any provision for starting the limitations period if a judgment or settlement never occurred, as would be the case with a purely voluntary cleanup. *Id.* Consequently, the Supreme Court found that Aviall had no Section 113(f)(1) claim. *Id.*

Important to the case at bar, in a footnote in *Cooper,* the Supreme Court stated in addition to never being subject to a civil action under Section 106 or 107(a), Aviall has also not been subject to an administrative order under Section 106, thus the Supreme Court declined to decide whether such an order would qualify as a "civil action under section 9606 ... or section 9607(a)" of CERCLA. *Id.* at fn. 5. That footnote pinpoints the issue in this matter as Plaintiffs assert they can bring a Section 113 claim pursuant to the two administrative orders issued by the USEPA.

### 3A. Whether Plaintiffs' claims in Count One can be brought pursuant to Section 113(f)(3)(B).

Plaintiffs argue that Section 113(f)(3)(B) expressly allows their claims in Count One as the costs set out in Count One were involuntarily incurred pursuant to the mandates of a settlement agreement with the USEPA, which is embodied in an Administrative Order on Consent (AOC). Doc. 296, p. 3. Section 113(f)(3)(B) provides a right of contribution for "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement." Plaintiffs argue that the AOC is an administrative settlement pursuant to Section 122(d)(3), while Defendants assert the AOC is simply an administrative order.

Section 122 governs settlements under CERCLA. Section 122(d)(3) states:

"Whenever the President enters into an agreement under this section with any potentially responsible party with respect to action under section 9604(b) [section 104(b) ] of this title, the President shall issue an order or enter into a decree setting forth the obligations of such party. The United States district court for the district in which the release or threatened release occurs may enforce such order or decree." Turning to Section 104(b), it provides that the President may undertake "investigations, monitoring, surveys, testing, and other information gathering as he may deem necessary or appropriate to identify the existence and extent of the release or threat thereof . . .".

Plaintiffs state the settlement negotiations commenced after June 23, 2000, when USEPA sent Special Notice Letters to the parties it considered liable for Sauget Area 2 seeking a settlement offer from the named PRPs to undertake investigatory work—a remedial investigation and a feasibility study—at the Sauget Area 2 site. Plaintiffs state that they and a group of other parties ultimately reached a settlement with USEPA to undertake the work in Sauget Area 2 which was embodied in the AOC. However, this Court finds that based on the language of the AOC at issue, it is exactly what it is says it is, an administrative order, not an administrative settlement giving rise to a right of contribution pursuant to Section 113(f)(3)(B).

The AOC at issue states in its caption that it is an "ADMINISTRATIVE ORDER BY CONSENT PURSUANT TO SECTION 106 OF THE COMPREHENSIVE ENVIRONMENTAL RESPONSE COMPENSATION, AND LIABILITY ACT OF 1980, as amended, 42 U.S.C. 9606(a)." Section 106(a) states "[t]he President may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and welfare and the environment." [3] Nowhere in Section 106 is settlement mentioned. As stated previously, the power to enter into settlements is provided for in Section 122(a). The fact that the USEPA labeled the document an "Administrative Order by Consent" and explicitly provides in the caption that it is issued pursuant to Section 106 and not Section 122, leads this Court to find that it is exactly that, an administrative order, and not a settlement.

While Plaintiffs argue that the AOC qualifies as a settlement as the work Plaintiffs are directed to undertake in the AOC is work that the President is authorized to order pursuant to Section 104 and the AOC states it is issued in part pursuant to Section 122, the Court finds this argument without merit. The AOC states that: "The Order is issued pursuant to the authority vested in the President of the United States by Sections 104, 106(a), 107 and 122 of [CERCLA]." When reading that statement in context of the entire AOC, the Court finds that those provisions are the general statutes giving rise to the President's authority to undertake various actions that make up the AOC, but that the AOC *itself* is issued pursuant to Section 106(a). The mentioning of Section 122 is necessary as the AOC states how USEPA sent a Special Notice of Liability letter pursuant to Section 122(e)(1) of CERCLA that first informed Plaintiffs and the other PRPs of the situation at the Sauget Area 2 sites.[4] As stated previous-

---

3. The President's authority to issue administrative orders has been delegated to the USEPA by Executive Order No. 12580, January 23, 1987, 52 Fed.Reg. 2923.

4. As for the other sections, as stated earlier, Section 104 is mentioned in the AOC as that section provides for remedial investigations to be undertaken. Section 107 is included as the AOC warns Respondents that should they

ly, the Court believes that were this AOC to constitute a settlement pursuant to section 122, USEPA would have stated in the caption that the AOC was being issued pursuant to Section 122(d)(3), and not pursuant to Section 106(a).

Further evidence that the AOC is an administrative order per section 106 and not a settlement under Section 122 is based on part ten of the agreement titled "Stipulated and Statutory Penalties." That section states that "[v]iolation of any provision of this Order may subject Respondent(s) to civil penalties of up to twenty-seven thousand five hundred dollars ($27,599) per violation per day, as provided in Section 106(b)(1) of CERCLA." Additionally, the AOC provides that in the event Respondents violate the Order, the USEPA "may seek judicial enforcement of this Order pursuant to Section 106 of CERCLA." As the AOC states Section 106 and 106(b)(1) governs in the event of a violation of the AOC, one can only conclude then that it is under Section 106 that the AOC must be issued. Should the AOC have been a settlement pursuant to Section 122(d)(3), logically then, the AOC would have used Section 122's civil penalties provision in Section 122(1). Importantly, Section 122(1) is not mentioned in the AOC.

Moreover, nowhere in the twenty-five pages of the AOC is the word settlement or a derivation therefrom used. When referring to the document within the document, the AOC calls it an "Order" not a "settlement," further evidence that Section 106 is the authority pursuant to which the document was issued, not Section 122(d)(3). As the Court finds that the AOC is not an settlement pursuant to Section 113(f)(3)(B), the only other possible

way Count One can survive is if the administrative order qualifies as a civil action so as to bring a contribution action under Section 113(f)(1).[5] The Court turns to that issue next.

### 3B. Whether Plaintiffs' claims in Count One and Count Two can be brought pursuant to Section 113(f)(1).

■ In Count One, Plaintiffs argue they incurred costs pursuant to the AOC. In Count two, Plaintiffs argue the costs were incurred pursuant to a Unilateral Administrative Order (UAO) issued by USEPA under Section 106 to Pharmacia and the Defendants. The Court must decide whether these administrative orders give rise to a Section 113(f)(1) contribution action. Defendants argue that neither the UAO or the AOC qualify as a "civil action" under Section 113(f)(1) and this Court agrees.

Section 113(f)(1) specifies that a party may obtain contribution "during or following any civil action" under CERCLA Section 106 or 107(a). As discussed above, the Supreme Court held in *Cooper* that a private party who has not been sued under Section 106 or 107(a) may not obtain contribution under Section 113(f)(1) from other liable parties. *Cooper*, 125 S.Ct. at 580. This decision narrowed CERCLA litigation as previously Courts did not interpret the "during or following any civil action" language as being mandatory and exclusive condition to bringing a Section 113(f)(1) claim. Like the Fifth Circuit, many courts read the last part of Section 113(f)(1) as being a saving clause that did not make the "may" a "may only" so that

violate the AOC, USEPA can seek enforcement and punitive damages per Section 107.

**5.** The Court must undertake this analysis as Plaintiffs did not specifically plead in either

their second amended complaint or third amended complaint the subsection of Section 113 under which they were bringing their claims.

parties could bring a contribution action regardless of whether there was or had been a civil action. In the case at bar, as Plaintiffs did not bring their claim during or after a Section 106 or 107(a) action, they argue their claim can proceed based on two administrative orders issued by USEPA. This Court finds that administrative orders do not qualify as a civil action under Section 113(f)(1).

In interpreting a statute, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992), *citing United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241–42, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). If a court finds the words of a statute unambiguous, judicial inquiry is complete. *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981).

This Court finds that the natural meaning of "civil action" is clearly a non-criminal judicial proceeding. FEDERAL RULE OF CIVIL PROCEDURE 2 states that "[t]here shall be one form of action" to be known as "civil action". The term "civil action" refers to the "entire civil proceeding, including all component 'claims' and 'cases' within that proceeding".[6] Baiker -McKee, Federal Civil Rules Handbook, 151 (2005); *see also Nolan v. Boeing Co.,* 919 F.2d 1058, 1066 (5th Cir.1990). Further, FEDERAL RULE OF CIVIL PROCEDURE 3 governs the commencement of an action and states that "[a] civil action is commenced by filing a complaint with the court." Additionally, Black's Law Dictionary defines a civil action as "[a]n action brought to enforce, redress, or protect a private or civil right; a non-criminal litigation." BLACK'S LAW DICTIONARY 30 (7th ed.1999).

Turning to an administrative order, its natural meaning is far from that of being synonymous with civil action. According to Black's Law Dictionary, and administrative order is "[a]n order issued by a government agency after an adjudicatory hearing" as well as "[a]n agency regulation that interprets or applies a statutory provision." BLACK'S LAW DICTIONARY 1123 (7th ed.1999). Additionally, the Court notes that there is no mention of an administrative order in the Federal Rules of Civil Procedure.

Using the natural meaning of a "civil action" in Section 113(f)(1), that being an actual judicial proceeding, allows Section 113(f)(1) to be read in harmony along with other relevant sections of CERCLA. Section 113(f)(1) has distinct and mandatory conditions: that a contribution action can only be brought *during or after a civil action.* As stated previously, the Supreme Court found that if Section 113(f)(1) were to authorize contribution actions at any time, then Section 113(f)(3)(B), which permits contribution actions after an administrative or judicially approved settlement, would be superfluous. *Cooper,* 125 S.Ct. at 583. Section 113(f)(1) simply conditions a contribution action as having to be after a civil action, while Section 113(f)(3)(B) conditions it as having to be after an administrative or judicially approved settlement. This Court finds that the distinction made by the drafters demonstrates they saw a distinction between a civil action and administrative actions and orders. If it were Congress' intention that an administrative order would suffice to bring a Section 113(f)(1) action, then the Court does not see why Congress found it necessary to include Section 113(f)(3) allowing contribution actions after administrative or judicially approved settlements.

---

**6.** The Court finds it worthwhile to turn to the Federal Rules of Civil Procedure as Congress established that the federal courts should have exclusive jurisdiction for controversies arising under CERCLA.

Additionally, as noted by the Supreme Court in *Cooper*, Section 113's statute of limitations provision supports finding that an administrative order does not qualify as a civil action under Section 113(f)(1). The Supreme Court noted that Section 113 provides two express avenues for contribution: (1) Section 113(f)(1), "during or following" specified civil actions, and (2) Section 113(f)(3)(B), after an administrative or judicially approved settlement that resolves liability to the United States or a State. *Cooper*, 125 S.Ct. at 584. Then, the Supreme Court noted that Section 113(g)(3) provides two corresponding 3–year limitations periods for contribution actions, one beginning at the date of judgment and the other beginning at the date of settlement. *Id.* The Supreme Court found it important that "notably absent" from Section 113(g)(3) was any provision for starting the limitations period if a judgment or settlement never occurred, as would be the case with a purely voluntary cleanup. *Id.* Obviously, the two statute of limitations period correlate to the two sections providing a right of contribution. And as Section 113(f)(3)(B) deals only with settlements, the statute of limitations period for Section 113(f)(1) actions must be from the date of judgment, which is logical given the natural and plain meaning of a civil action. According to Black's Law Dictionary, a judgment is "[a] court's final determination of the rights and obligations of the parties in a case." BLACK'S LAW DICTIONARY 846 (7th ed.1999). Thus, the statute of limita-

tions provision of Section 113 supports this Court's finding that an administrative order does not qualify as a civil action as no judgment exists as to an administrative order.

Further, that a civil action does not include an administrative order is supported by the text of Section 106 of CERCLA, which provides for administrative orders. *See* 42 U.S.C. 9606(a). Section 106 states:

In addition to any other action taken by a State or local government, when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require. The President may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and welfare and the environment.

42 U.S.C. 9606(a). In short, Section 106 plainly provides the President with two distinct courses of action: (1) the President can bring suit in a district court, and/or (2) take *other action* including issuing an order.[7] Consequently, Congress

---

7. The Court notes that its reading of Section 106 is supported by other Courts. The United States Court of Appeals for the District of Columbia stated that "under Section 106(a), EPA may issue unilateral administrative orders ('UAOs') after notice to the affected state, directing the responsible parties to clean up the hazardous sites" and "[i]f a party fails to comply, EPA may file a civil action in the district court to enforce the UAO". *General*

*Electric Co. v. Environmental Protection Agency*, 360 F.3d 188 (D.C.Cir.2004); *see also Kelley v. E.P.A.*, 15 F.3d 1100, 1103 (D.C.Cir.1994)(stating that the EPA has the explicit power to issue administrative orders requiring private parties to clean up a site when imminent danger of harm exists and that if the party refuses to comply with the order, then the EPA may seek compliance in federal court).

clearly delineated between the President bringing a civil action and issuing an administrative order. Obviously Congress understood the difference between the two methods the President could use to protect the environment in Section 106, which leads this Court to believe that by only mentioning a civil action in Section 113(f)(1), by its clear and natural meaning, Congress clearly intended for a right of contribution to only be possible either during or following a civil action—a judicial proceeding, not during or after an administrative order.

Plaintiffs urge this court to follow the United States Court of Appeals for the Seventh Circuit's decision in *Rumpke of Indiana, Inc. v. Cummins Engine Co., Inc.,* 107 F.3d 1235, 1239 (7th Cir.1997), where the Seventh Circuit stated:

> Rumpke pointed out in both its brief and at oral argument that it is not subject to any administrative cleanup order from the Indiana Department of Environmental Management (IDEM), the federal Environmental protection Agency (EPA), or any other public authority. Thus, Rumpke is not a party that is now or ever has been subject to a civil action under CERCLA Section 106, 42 U.S.C. 9606 (which authorizes the President to bring an action to require responsible parties to clean up sites threatening the environment).

However, those statements were made as part of the Seventh Circuit's discussion as to whether or not Rumpke could bring a cost recovery action under Section 107(a), not a contribution action under Section 113. *Id.* Later in the opinion the Seventh Circuit sheds valuable insight into its interpretation of the requirements for a party to bring a Section 113(f)(1) suit and to support its decision that Rumpke could bring a section 107(a) cost recovery suit, as based on the Seventh Circuit's reading of Section 113(f)(1), he would not qualify under the section to be able to bring a Sec-

tion 113(f)(1) right of contribution action. The Seventh Circuit stated:

> Section 113(a)(1) begins with the following sentence: Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) [sec. 107(a)] of this title, during or following any civil action under section 9606 [sec. 106] of this title or under section 9607(a) of this title. Because neither a Section 106 nor a Section 107(a) proceeding has been concluded, Rumpke's action obviously does not "follow" such an action. Rumpke has brought its own Section 107(a) action, in Count One of its complaint. If it turns out that Rumpke is not the innocent party it portrays itself to be, then Rumpke will not qualify for the *Akzo* exception [so as to bring a cost recovery action under Section 107(a)]. It would still be entitled to seek contribution for its expenses from the other PRPs, assuming it met the requirements of Section 113(f)(1). (We acknowledge, as other courts have, that this seems to provide a disincentive for parties voluntarily to undertake cleanup operations, because a Section 106 or Section 107(a) action apparently must be ongoing or already completed before Section 113(f)(1) is available. This appears to be what the statute requires, however.)

*Id.* at 1241 (emphasis added). Therefore, it seems clear to this Court that the Seventh Circuit was acknowledging, that while the statute may not promote environmental clean-up, nonetheless, the statute requires that before a party can bring a Section 113(f)(1) action, there must be an actual judicial action going on or that has concluded under Section 106 or 107(a).

Plaintiffs also urge this Court to pay heed to the Seventh Circuit's decision in *Akzo Coatings, Inc. v. Aigner Corp.,* 30

F.3d 761 (7th Cir.1994). However, Plaintiffs mischaracterize the factual scenario and legal issues of that case. In *Akzo*, the issue was not whether Akzo met the "during" or "following" a civil action requirement of Section 113(f)(1) so as to bring a right of contribution action. Instead, the issue before the Seventh Circuit was whether or not Akzo could bring a contribution action against Aigner for clean-up work it had done as Aigner argued that a settlement agreement (that was approved by a court and thus a consent degree was issued) it entered into with USEPA covered the clean-up work that Akzo was suing over. *Id.* at 763. Aigner's argument was based on Section 113(f)(2) which states that: "[a] person who has resolved its liability to the United States in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement." Akzo was not a party to that settlement agreement. *Id.*

In Akzo, the Seventh Circuit stated that the "government's agreement to seek nothing more from the parties to the decree does not signal an intent to preclude non-settling parties from seeking contribution." *Id.* at 766. Ultimately, the Seventh Circuit held that Akzo's work was not a matter addressed by the consent decree and was entitled to seek contribution from the PRPs who had entered into the consent decree with the government. *Id.* at 767.

The part of the Seventh Circuit's opinion that Pharmacia quoted to the Court as the Seventh Circuit finding was:

a contrary outcome would leave firms like Akzo in an untenable position. A party served with a unilateral order under section 106 has little choice but to comply; the statute places strict limits on prior judicial review of such orders and authorizes fines of up to $25,000 per day for a party who refuses to obey. To subsequently preclude a compliant party from seeking contribution for the sums it has expended ... will not expedite cooperative environmental remediation.

*Id.* at 768–69. The part that Plaintiffs *left out* as denoted by their use of ellipses is key in understanding the context in which that was written. The last sentence quoted fully reads: "To subsequently preclude a compliant party from seeking contribution for the sums it has expended simply because it had the misfortune to be drafted by the EPA before a remedial plan could be prepared and a settlement negotiated will not expedite cooperative environmental remediation." The Seventh Circuit went on to state immediately thereafter, "If defendants were permitted to settle with the government for part of the clean-up costs of a site, and then become immune from suit for contribution by private entities who paid for *other* cleanup costs, it would defeat the policy of CERCLA. Settling PRPs should not be made to pay twice for the same clean-ups, but they also should not get a windfall because they settled." *Id.* (emphasis added).

When reading the statements in context, it is clear that the Seventh Circuit was discussing how one PRP should not gain an unfair advantage over another PRP based upon how long they wait to respond and take part in clean-up efforts and as to whether or not they enter into a settlement agreement. Nowhere in the opinion, as Plaintiffs would lead this Court to believe, did the Seventh Circuit squarely address the issue of whether a party to a UAO who had not been named in a lawsuit under Section 106 or 107(a), is entitled to seek contribution under Section 113(f)(1).

Accordingly, it seems clear to this Court, that in light of the Supreme Court's recent opinion in *Cooper* and its analysis and interpretation of CERCLA therein, that it is now mandatory that a Section 113(f)(1) contribution claim can only be brought during or after a civil action under Section 106 and 107(a). And in turn, in deciding whether or not an administrative order qualifies as a civil action under Section 113(f)(1), this Court finds based on the Supreme Court's discussion of CERCLA in *Cooper* and CERCLA itself, an administrative order does not qualify as a civil action. Therefore, the Court finds that Plaintiffs do not have a cause of action under Section 113(f)(1) in either Count One or Two.[8]

### Leave to Amend

In the event that the Court decided to grant Defendants' motions to dismiss, Plaintiffs requested that the Court grant them leave to amend their complaint to include a claim for cost recovery against Defendants under Section 107 of CERCLA. Defendants in turn argue that leave to amend to bring a claim under Section 107 would be futile.

Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be freely given when justice so requires. *See also Dubicz v. Commonwealth Edison Co.,* 377 F.3d 787, 792 (7th Cir.2004). The liberal policy of allowing amendments to be freely made is based in part on the belief that decisions on the merits should be made whenever possible, absent countervailing considerations. A trial may deny a motion to amend where amendment would be futile. *Id.*

This Court is not in a position at this time, based on the pleadings before it, to

find that leave to amend would be futile. However, neither is the Court taking the position that Plaintiffs can state a valid cause of action under Section 107. Defendants' arguments that Plaintiffs as a PRP cannot bring Section 107 claims properly belong in a motion to dismiss. Accordingly, the Court will allow Plaintiffs leave to amend so as to bring Section 107 claims if they believe the facts allow them to do so under the law.

### Conclusion

The Court hereby **GRANTS** Defendants' motions to dismiss (Docs. 280, 281, 282 and 285) and DISMISSES *without prejudice* Plaintiffs' second amended complaint at Doc. 78 and third amended complaint at Doc. 148 in their entirety. The Court **GRANTS** Plaintiffs leave to file a fourth amended complaint on or before March 18, 2005. The Court warns Plaintiffs that failure to file a fourth amended complaint by March 18, 2005, will result in this Court dismissing the complaint *with prejudice* and closing this matter. Motions to dismiss the fourth amended complaint must be filed on or before April 1, 2005, and the Court encourages Defendants to file a consolidated motion and memorandum in support. Plaintiffs response to any motions to dismiss filed by Defendants must be filed on or before April 15, 2005.

In light of the Court dismissing the complaints herein, the bench trial scheduled for March 21, 2005 before the undersigned Judge is cancelled. Additionally, as a result of this Order, the Court DENIES AS MOOT, without prejudice to refile, the following motions: PolyOne Corporation's motion for summary judgment (Docs.241), Pharmacia's motion to bar Defendants'

---

8. While this decision may seem contrary to the purpose of CERCLA, as the Supreme Court stated in *Cooper,* "it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we

are governed." *Cooper,* 125 S.Ct. at 584, *citing Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

witnesses and exhibits at trial (Doc. 320), Pharmacia's motion in limine (Doc. 321), Pharmacia's motion to bar PolyOne's witnesses and exhibits at trial (Doc. 323), PolyOne Corporation's motion to strike Plaintiff's trial brief (Doc. 326), Solutia's motion to bar witnesses and exhibits (Doc. 327), and PolyOne Corporation's motion for leave to file surreply in opposition (Doc. 330).

Furthermore, the Court **DIRECTS** Plaintiffs and Defendants Service American Corporation and Volume Services, Inc. to file a brief with the Court as to whether their joint motion to approve settlement agreement at Doc. 310 is still viable in light of this Order, on or before March 18, 2005. Likewise, the Court **DIRECTS** Plaintiffs and Defendant Crown Cork & Seal Company, Inc. to file a brief with the Court as to whether their joint motion to approve settlement agreement at Doc. 324 is still viable in light of this Order, on or before March 18, 2005.

**IT IS SO ORDERED.**