**RESPONSIBLE ENVIRONMENTAL SOLUTIONS ALLIANCE, Plaintiff,**

v.

**WASTE MANAGEMENT, INC., et al., Defendants.**

No. 3:04cv013.

United States District Court, S.D. Ohio, Western Division.

March 27, 2007.

John A. Heer, Leslie G. Wolfe, Michael A. Cyphert, Walter & Haverfield LLP, Cleveland, OH, for Plaintiff.

Ralph Gary Winters, McCaslin, Imbus & McCaslin, Cincinnati, OH, Carter E. Strang, Martin Harry Lewis, Tucker Ellis & West, Cleveland, OH, for Defendants.

DECISION AND ENTRY OVERRULING IN PART AND OVERRULING, AS MOOT, IN PART MOTION FOR RECONSIDERATION FILED BY DEFENDANTS WASTE MANAGEMENT, INC., AND CHEMICAL WASTE MANAGEMENT, INC. (DOC. # 208), TREATED AS A MOTION FOR SUMMARY JUDGMENT

RICE, District Judge.

Plaintiff Responsible Environmental Solutions Alliance ("Plaintiff") is comprised of a number of potentially responsible parties ("PRPs") which have agreed with the United States Environmental Protection Agency ("EPA") to conduct a remedial investigation and feasibility study, in order to investigate the nature and extent of contamination at the Barrel Fill Operable Unit of the Tremont City Landfill Site located in Clark, County, Ohio. Plaintiff brings this litigation seeking, *inter alia,* to recover contribution under § 113 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9613, from a number of other PRPs, including Defendants Waste Management, Inc. ("WMI"), and Chemical Waste Management, Inc. ("CWM").

In its Decision of March 24, 2006 (Doc. # 207), this Court addressed, among other motions, the Motion for Summary Judgment (Doc. # 191) filed by WMI and CWM. Therein, those Defendants had argued that they were entitled to summary judgment on Plaintiff's CERCLA contribution claim on the basis of *Cooper Industries v. Aviall Services, Inc.,* 543 U.S. 157, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004). In *Cooper Industries,* the Supreme Court held that a private party cannot recover contribution under CERCLA, in accordance with § 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), *unless* it has been sued in an action against it, prior to bringing the claim for contribution, pursuant to § 106 or § 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a). According to WMI and CWM, Plaintiff could not recover contribution, since neither it nor its constituent members have been sued under either of those statutory provisions. In response, thereto, Plaintiff, *inter alia,* requested and obtained leave of Court to file a Second Amended Complaint, the stated purpose of which was to clarify that its claim for contribution under CERCLA arises under § 113(f)(*3*)(*B*), rather than § 113(f)(*1*), thus making *Cooper Industries* inapplicable. *See* Doc. # 193. Since Plaintiff's Second Amended Complaint did not contain an express or implied claim under § 113(f)(1), the Court concluded that the Plaintiff's claims were not governed by *Cooper Industries* and, thus, overruled, as moot, the Motion for Summary Judgment filed by WMI and CWM (Doc. # 191).

This case is now before the Court on the Motion for Reconsideration (Doc. # 208) filed by WMI and CWM, wherein, accepting the premise that Plaintiff's claim for contribution is brought pursuant to § 113(f)(3)(B), they argue that they are nevertheless entitled to summary judgment on Plaintiff's CERCLA contribution claim, because the Administrative Order by Consent ("AOC"), between the Plaintiff's members and the EPA, did not constitute a settlement under § 113(f)(3)(B),

and, therefore, Plaintiff does not have a viable contribution claim under that statutory provision. As an initial matter, the Court overrules that motion as moot as it relates to WMI, given that it has been dismissed as a Defendant herein. *See* Doc. # 219. Turning to CWM, the Court treats that Defendant's request for reconsideration as a motion for summary judgment,[1] predicated upon the proposition that the AOC was not a settlement, as that term is used in § 113(f)(3)(B), and, thus, Plaintiff does not have a valid contribution claim under that statutory section. Based upon the reasoning which follows, the Court overrules CWM's motion, so construed. The Court begins its analysis by setting forth the procedural standards which are applicable to all motion for summary judgment.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is

---

1. The Court treats that motion as one for summary judgment, rather than one to dismiss for failure to state a claim, because CWM is seeking reconsideration of its previous Motion for Summary Judgment. Moreover, it is necessary to consider the AOC, when ruling on the Motion for Reconsideration (Doc. # 208). In the absence of focused argument to the contrary, this Court assumes that the AOC is a matter outside the pleadings, thus requiring that the Court treat CWM's as a motion for summary judgment, rather than to dismiss. *See* Fed.R.Civ.P. 12(b). Parenthetically, although the Court has not been provided an authenticated copy of the AOC, its authenticity cannot be questioned, given that both CWM and Plaintiff have filed identical copies of that document. *See* Docs. # 191 and 209.

some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Wright, Miller & Kane, *Federal Practice and Procedure*, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

Contribution under CERCLA is governed by § 113(f), which provides in relevant part:

(f) *Contribution*

(1) *Contribution*

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action

under section 9606 of this title or section 9607 of this title.

(2) *Settlement*

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

(3) *Persons not party to settlement*

\*　　\*　　\*　　\*　　\*　　\*

(B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

42 U.S.C. § 9613(f).

As indicated, CWM contends that the Plaintiff's constituent members did not enter into a settlement, as that term is used in § 113(f)(3)(B), and, therefore, Plaintiff does not have a viable contribution claim under that statutory provision. Administrative settlements under CERCLA are governed by § 122 of the statute, which provides in pertinent part:

(a) Authority to enter into agreements

The President, in his discretion, may enter into an agreement with any person (including the owner or operator of the facility from which a release or substantial threat of release emanates, or any other potentially responsible person), to perform any response action (including any action described in section 9604(b) of this title) if the President determines that such action will be done properly by such person. Whenever practicable and in the public interest, as determined by the President, the President shall act to facilitate agreements under this section that are in the public interest and consistent with the National Contingency Plan in order to expedite effective remedial actions and minimize litigation. If the President decides not to use the procedures in this section, the President shall notify in writing potentially responsible parties at the facility of such decision and the reasons why use of the procedures is inappropriate. A decision of the President to use or not to use the procedures in this section is not subject to judicial review.

\*　　\*　　\*　　\*　　\*　　\*

(d) Enforcement

(1) Cleanup agreements

(A) Consent decree

Whenever the President enters into an agreement under this section with any potentially responsible party with respect to remedial action under section 9606 of this title, following approval of the agreement by the Attorney General, except as otherwise provided in the case of certain administrative settlements referred to in subsection (g) of this section, the agreement shall be entered in the appropriate United States district court as a consent decree. The President need not make any finding regarding an imminent and substantial endangerment to the public health or the environment in connection with any such agreement or consent decree.

\*　　\*　　\*　　\*　　\*　　\*

(3) *9604(b) agreements*

Whenever the President enters into an agreement under this section with any potentially responsible party with respect to action under section 9604(b) of this title, the President shall issue an order or enter into a decree setting forth the obligations of such party. The

United States district court for the district in which the release or threatened release occurs may enforce such order or decree.

42 U.S.C. § 9622.[2]

■ CWM points to the requirement contained in § 122(d)(1)(A) that an agreement concerning a *remedial* action, executed in accordance with § 106 of CERCLA, be entered as a consent decree by a District Court.[3] CWM contends that the Plaintiff's constituent members did not enter into a settlement with the EPA, as that term is used in § 113(f)(3)(B), because a District Court has not entered the AOC as a consent decree. While the Court agrees with CWM that the AOC has not been so entered as a consent decree, it disagrees with CWM that this undisputed fact means that the Plaintiff's members have not entered into a settlement as that term is used in § 113(f)(3)(B). The EPA did *not* enter into an agreement concerning a *remedial* action concerning a consent decree; rather, the EPA entered into an agreement with the Plaintiff's members, concerning a *removal* action. Section 122(d)(1)(A) does not require that an agreement concerning a *removal* action be entered as a consent decree.

■ The caption of the AOC between the EPA and the Plaintiff's members states that it is an is an administrative order of consent entered into pursuant to §§ 104, 107 and 122 of CERCLA, 42 U.S.C. §§ 9604, 9607 and 9622.[4] *See* Doc. # 209 at Ex. B, p. 1. That agreement also "requires [the Plaintiff's members] to conduct a Remedial Investigation and Feasibility Study ("RI/FS") to investigate the nature and extent of contamination for the Barrel Fill Operable Unit of the Tremont City Landfill Site in Tremont City, Ohio ..., and [to] develop and [to] evaluate potential remedial alternatives." *Id.* The conduct of a remedial investigation and feasibility study is a removal action, which is defined as "such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances." 42 U.S.C. § 9601(23). The purpose of such an investigation and study is to assess and to evaluate the release or threatened release of hazardous substances. Indeed, the Sixth Circuit so held in *Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 843–44 (6th Cir.1994). *Accord, Atlantic Richfield Co. v. American Airlines, Inc.*, 98 F.3d 564, 570 (10th Cir. 1996); *United States v. Rohm & Haas Co.*, 2 F.3d 1265, 1277 (3d Cir.1993); *General Elec. Co. v. Litton Indus. Automation Sys., Inc.*, 920 F.2d 1415, 1417–19 (8th Cir.1990), *cert. denied*, 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991). Moreover, § 122(d)(3), which is quoted above, authorizes the President to issue an order *or* to enter into a consent decree, whenever executing an agreement with a PRP concerning any action under § 104(b). Section 104(b), in turn, authorizes the

---

**2.** The President has delegated that authority given to him by § 122(a) to the Administrator of the EPA. *See* Executive Order No. 12580, 52 Fed.Reg. 2923 (1987).

**3.** Parenthetically, this Court rejects the Plaintiff's proposition that, in light of *Cooper Industries v. Aviall Services, Inc.*, 543 U.S. 157, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004), there should be reconsideration of the decisions which have held that a PRP can seek contribution, only through § 113, and not through § 107. The Sixth Circuit so held in *Centerior*

*Service Co. v. Acme Scrap Iron & Metal Co.*, 153 F.3d 344, 349–56 (6th Cir.1998). The Sixth Circuit, and not this Court, must reconsider that decision, if it is to be reconsidered. At present, *Centerior* is binding authority on this Court.

**4.** Section 104(a)(1) authorizes the President to permit PRPs "to carry out the action, conduct the remedial investigation, or conduct the feasibility study in accordance with section 9622 of this title."

President to investigate, monitor, test and otherwise gather information concerning hazardous waste sites, which is precisely what the AOC between the members of the Plaintiff and the EPA herein is designed to accomplish. To hold that entry of a consent decree is a predicate for concluding that there is a settlement under § 113(f)(3)(B), would deny the discretion invested in the President by § 122(d)(3) either to issue an order or to enter into a consent decree under such circumstances.

Accordingly, this Court rejects the premise of CWM that the Plaintiff's members did not enter into a settlement, as that term is used in § 113(f)(3)(B), because the AOC has not been entered by a District Court as a consent decree.

In addition, CWM relies upon a number of decisions in which courts have held that PRPs had not entered into such settlements and, therefore, could not seek contribution under § 113(f)(3)(B). For reasons which follow, this Court concludes that each of those decisions can be distinguished.

Initially, Plaintiff has cited *Pharmacia Corp. v. Clayton Chemical Acquisition*, 382 F.Supp.2d 1079 (S.D.Ill.2005). Therein, the EPA issued an order in accordance with § 106 of CERCLA, 42 U.S.C. § 9606, directing the plaintiffs, a group of PRPs, to undertake a RI/FS of a hazardous waste site located in the area of East St. Louis, Illinois. Section 106 authorizes the President to issue orders "as may be necessary to protect public health and welfare and the environment." 42 U.S.C. § 9606(a). After having expended a significant sum performing the RI/FS, the plaintiffs sought contribution from other PRPs, which moved to dismiss those claims. The District Court sustained those motions, concluding, *inter alia*, that the order was not a settlement under § 113(f)(3)(B), because it had been issued in accordance with § 106. The District Court noted that the caption of the order mentioned § 106, rather than § 122, and that the document did not use the word settlement. Moreover, although the body of the document mentioned that it had been issued in accordance with, *inter alia*, § 122, the District Court concluded that this statutory provision had been mentioned, because the plaintiffs had been sent notices in accordance with § 122(e), before the order had been issued. In contrast, herein, the caption of the AOC states that it has been issued in accordance with § 122. The caption of the AOC does not suggest that it is an order issued pursuant to § 106. Indeed, the only references to § 106 contained in that document are in Section XII, entitled Reservation of Rights, and Section XII, Other Claims, both of which address potential claims that were *not* being resolved by the AOC. Therefore, it would be fanciful to conclude, as did the Southern District of Illinois in *Pharmacia Corp.*, that the AOC is an order issued in accordance with § 106, rather than a settlement entered into under § 122.[5]

---

**5.** Like the order issued in *Pharmacia Corp.*, the AOC entered into herein does not use the word "settlement." That does not, however, convince this Court that the AOC is not a settlement, as that term is used in § 113(f)(3)(B). Throughout the AOC, there are references to the parties agreeing and the document is referred to as an agreement. Among other definitions, the online version of the Oxford English Dictionary defines "settle" as, "[t]o fix by mutual agreement." *See* http://dictionaryed.com/cgi /entry/50221027?query_type=word & query-word= settlement & first=1 & max_to_show=10 & single=1 & sort_type=alpha. Moreover, the press release issued by the EPA, upon the execution of the AOC, indicated that the EPA had settled with certain PRPs to begin the process that will ultimately lead to the cleanup of the Barrel Fill Operable Unit at the Tremont City Landfill.

CWM also relies upon *ASARCO, Inc. v. Union Pacific Railroad Co.*, 2006 WL 173662 (D.Ariz.2006), to support its premise that the Plaintiff cannot seek contribution under § 113(f)(3)(B). That litigation concerned the environmental cleanup of a parcel of real estate which had been owned at various times by both the plaintiff and defendant. After having expended nearly $30 million to remediate the site, pursuant to an agreement with the Nebraska Department of Environmental Quality ("NDEQ"), the plaintiff sought contribution from the defendant in accordance with § 113(f)(3)(B). The defendant moved for summary judgment, arguing that the plaintiff's agreement with the NDEQ did not constitute a settlement as that term is used in § 113(f)(3)(B). The District Court concurred with the defendant, reasoning that the agreement did not constitute such a settlement, because it failed to resolve the plaintiff's liability under either state law or CERCLA and that, therefore, it was not a settlement under § 113(f)(3)(B), which only permits contribution actions by PRPs which have resolved their liability with a state or with the EPA. Herein, in contrast, by executing the AOC, the Plaintiff's members have settled their liability with the EPA to conduct and to fund a RI/FS.

In addition, CWM has cited *Ferguson v. Arcata Redwood Co., LLC,* 2005 WL 1869445 (N.D.Cal.2005), in support of its assertion that the AOC does not constitute a settlement, as that term is used in § 113(f)(3)(B). Therein, the plaintiff investigated and cleaned up environmental contamination located on and emanating from a parcel of real estate located in Smith River, California, after which she initiated that litigation, seeking to recover from a number of Defendants setting forth, *inter alia,* a claim for contribution under § 113(f) of CERCLA. One of the defendants moved for summary judgment on that claim, and the District Court granted that motion. Although the plaintiff had conceded that she did not have a valid claim under § 113(f)(1), she argued that she could recover contribution under § 113(f)(3)(B). The District Court disagreed, given that none of the documents submitted by plaintiff in support of that proposition remotely suggested that she had agreed to remediate the parcel of real estate or even mentioned CERCLA. *Ferguson* is clearly distinguishable, since, herein, the AOC is an agreement by which the Plaintiff's members agreed to conduct a RI/FS in accordance with CERCLA.

Based upon the foregoing, the Court overrules CWM's Motion for Reconsideration (Doc. # 208), which has been treated as a motion seeking summary judgment, based upon the assertion that Plaintiff's members cannot seek contribution under § 113(f)(3)(B), because the AOC is not a settlement as that term is used in that statutory provision.